MATHER v. JAREL et al.

(Circuit Court, W. D. Missouri, W. D. January 11, 1888.)

MORTGAGES—ACKNOWLEDGMENT—IMPEACHMENT.

A mortgage purported to be signed by the female defendant by making her mark, and the certificate of acknowledgment was in due form, but such defendant denied the execution, and testified that the justice, with whom she was well acquainted, called at her house and signed her name to the mortgage, and executed the certificate in her presence, but without addressing her or asking her consent. There was evidence to show that she had taken part in the negotiation for the loan, and she admitted being present with her husband when the money was obtained. Held, that the evidence was not sufficient to impeach the execution of the mortgage.

In Equity. Bill to foreclose a mortgage.

This suit was brought by Samuel Mather against Elizabeth T. Jarel, the owner of the mortgaged property, and her husband, John S. Jarel.

Botsford & Williams, for complainant.

Harkless & Burr, for defendants.

THAYER, J. This is a bill in equity to foreclose a mortgage on lands situated in Barton county, Missouri. The mortgaged premises belong to the defendant Mrs. Elizabeth T. Jarel, who is a married woman and the wife of her co-defendant, John S. Jarel. Mrs. Jarel defends the action on the ground that she neither signed nor acknowledged the mortgage in question. There is no other defense to the bill by either defendant. The mortgage purports to have been signed by Mrs. Jarel by making her mark, and her signature thereto is attested by the justice before whom the mortgage purports to have been acknowledged. The certificate of acknowledgment is in due form of law and by the proper officer, but the contention is that the certificate is false.

In some states (as is well known) a certificate of acknowledgment to a deed or mortgage can only be impeached on the ground of fraud; unless fraud is shown the certificate is conclusive of the facts it asserts. Russell v. Theological Union, 73 Ill. 337; Johnston v. Wallace, 53 Miss. 338; and see note to Paxton v. Marshall, 18 Fed. Rep. 365, where the cases are collated. In other jurisdictions (and notably in Missouri) a certificate of acknowledgment is regarded as prima facie evidence of the matters therein stated, and it may be contradicted and overthrown, although no fraud is established. Wannell v. Kem, 57 Mo. 478; Steffen v. Bauer, 70 Mo. 399. But even in those states where a certificate of acknowledgment may be overcome without proof of fraud, the rule is that the certificate is proof of a high grade of the facts it asserts, and that it cannot be overthrown except by proof that is clear, cogent, and convincing. Bohan v. Casey, 5 Mo. App. 101; Biggers v. Building Co., 9 Mo. App. 210. And such is also the rule announced by the supreme court of the United States in Insurance Co. v. Nelson, 103 U. S. 548; Young v. Duvall, 109 U. S. 573, 3 Sup. Ct. Rep. 415. A less stringent rule than the one last stated would render titles to real estate very insecure; therefore, public policy

demands that the foregoing rule, as to the kind of proof required to overcome a certificate of acknowledgment, should be inflexibly enforced.

In the present case, I have made a critical examination of the testimony relied upon by the defendant to overcome the certificate of acknowledgment, and while I consider myself bound by the Missouri rule on the subject, I have no hesitation in holding that it is insufficient to invalidate the certificate. I might add that there are several circumstances which lead me to regard the testimony in question with great distrust. The mortgage appears to have been executed and acknowledged in the presence of but four persons, namely, the two defendants (Mr. and Mrs. Jarel) and their daughter, then aged 10 years, and the justice of the peace who attested Mrs. Jarel's signature and took her acknowledgment. The justice died about 10 months subsequent to the execution of the mortgage, and it was more than a year after his death before either of the defendants said or did anything (at least in public) to discredit the acknowledgments. As the case stands there is the certificate of the justice in due form on the one hand, which was not questioned until after his death, and on the other, the testimony of Mrs. Jarel, her husband, and young daughter, all of whom are directly interested in impeaching the officer's certificate. The justice is shown to have been a man of more than ordinary capacity and intelligence, and of unimpeachable character, who had had more than six years' experience in the discharge of the duties of his office. Furthermore, he had no personal interest in the transaction such as would furnish a motive for making a false certificate. But this is not all. The account given by the defendant and her husband of what transpired when the mortgage was executed, when considered in connection with what was said and done by them previously and subsequently, does not bear the impress of probability unless it be conceded that both of the defendants are destitute of moral worth or even common honesty.

Without entering further into details, it will suffice to say that according to the admissions of Mrs. Jarel it appears that she was aware that an application for a loan on her property had been made by her husband; that she was present when the property was examined by the loan agent with a view of making the loan, and although the application was drafted in her presence, and although she did not desire the loan and had resolved not to sign the mortgage, that she nevertheless held her peace and suffered the application to go forward. It also appears, likewise by her own admission, that she was advised of the acceptance of the proposed loan and of the preparation of the necessary papers, and that a justice who lived in the neighborhood, and with whom she was well acquainted, would call to take her acknowledgment. Her statement then is that when the justice called at her house and the mortgage and bonds were handed to him in her presence, he sat down in the same room with her, and, without addressing a word to her, or asking her consent, proceeded to sign her name both to the mortgage and bonds, and to execute the certificate of acknowledgment. Her further statement is that she made no protest or objection to what was done in her presence; that she

was a silent spectator of the whole proceeding, and suffered the officer to sign her name to the mortgage and to depart without a word of dissent. The next day, according to her own admission, she went with her husband to the loan agent, and saw the mortgage delivered, and the money obtained. A portion of the money so obtained was immediately spent in purchasing wire to fence a portion of her land. Mrs. Jarel appears from her testimony to be a woman of more than ordinary spirit and resolution, and of fair intelligence. She does not claim to have stood in fear of her husband, or to have acted under duress then or at any other time.

Taken altogether the testimony of the defendant proves too much. It shows that the account of what took place when the mortgage was signed is either very much distorted, and therefore should not be credited, or that Mrs. Jarel entered into a conspiracy with her husband to defraud the mortgagee by obtaining money on what was known to be a worthless security, and in that view her testimony should be rejected as wholly unworthy of credence. The dilemma in which her testimony places her is so patent, that at one period of her cross-examination she was forced to say that she did not know it was wrong to let her husband obtain money on a pretended mortgage which she had not signed.

It is perhaps unnecessary to pursue the subject further, but I will add that there is testimony in the case, which I see no reason to distrust, to the effect that when the application for the loan upon her property was prepared, Mrs. Jarel not only did not object to the loan, but took an active part in the conversation, and herself gave considerable information to the loan agent relative to the mortgaged property, which, in part at least, influenced him to recommend the loan to the mortgagee. There is also credible testimony to the effect that she was also present on one occasion at the agent's office before the money to be advanced on the mortgage had arrived, and expressed considerable dissatisfaction because of its non-arrival, and because of the delay in closing the transaction. While this testimony has no immediate bearing on the question whether her acknowledgment was duly taken, nevertheless it does demonstrate that she knowingly practiced a fraud if she had predetermined not to execute the mortgage, and if her testimony as to the manner in which the justice took her acknowledgment is to be credited.

In any view of the case, the evidence is wholly insufficient to impeach the officer's certificate; and as that is the sole defense attempted, a decree of foreclosure must be entered. It is so ordered.