## STATE NAT. BANK v. MEE *et al.*

No. 3172.    Opinion Filed November 18, 1913.

(136 Pac. 758.)

1. **ACKNOWLEDGMENT—Taking of Acknowledgment.** The act of a notary public in taking the acknowledgment of a person to a deed, mortgage, or other instrument is purely ministerial, and in no wise judicial.

2. **SAME.** The fact that such act is ministerial and not judicial does not lessen the importance of the act, nor justify a notary in failing to give due consideration to the discharge of a grave and responsible duty.

3. **SAME—Notaries—Negligence—What Constitutes.** A notary is guilty of negligence if he certifies that he knows a person whom he does not know, or certifies that he knows a person on a mere introduction (without further proof) by some third person, or if he certifies that he knows a person to be the identical one who executed an instrument without such person actually appears before him, and personally acknowledges the instrument in his presence.

4. **SAME—Right of Action—Proximate Cause.** M., a notary public, certified that Lula S. and Mary S. personally appeared before him, and acknowledged the execution of a deed. Mary S. was the owner of the real estate described in the deed. Lula S. presented the deed, together with a check purporting to be signed by one Smith, who was a depositor at the bank at which the presentation was made (but which check was a forgery), and requested payment of the check. The bank, on the strength of the certificate of the notary to the deed, showing that Mary S., the owner of the land, had personally appeared and acknowledged execution thereof, paid to Lula S. the sum of $750 on the forged check. Suit was brought by the bank against the notary and his bondsmen for breach of his notarial bond in making a false certificate. A demurrer was urged against the petition, and sustained by the court. **Held**, there was no error in sustaining the demurrer. The forged check, and not the false certificate made by the notary, was the proximate cause of the loss, and therefore no cause of action existed in favor of the bank and against the notary and the sureties on his bond.

(Syllabus by Robertson, C.)

*Error from District Court, Oklahoma County;*
*George W. Clark, Judge.*

Action by the State National Bank against Robert Mee and others to recover money judgment. Judgment for defend-

ants on demurrer to petition, and plaintiff brings error. Affirmed.

*Wilson & Tomerlin* and *E. E. Buckholts,* for plaintiff in error.

*Winn & Brill,* for defendants in error.

Opinion by ROBERTSON, C. This is an action by the State National Bank against Robert Mee, a notary public, and G. M. Stephenson and J. A. J. Baugus, sureties on the notarial bond of said Robert Mee, to recover damages for failure to faithfully discharge his duties as such notary public. The material part of the petition reads as follows:

"Fourth.   Plaintiff alleges that the said Robert Mee has failed to faithfully perform the duties required of him by law. as such notary public, and has been negligent in the performance and discharge of said duties, whereby this plaintiff has been damaged, for that on or about April 13, 1910, he, the said Robert Mee, did purport to take the acknowledgment of one Mary Stone, colored, and Lula Shields, colored, to a certain warranty deed, whereby the said Mary Stone and Lula Shields purported to convey to one Alfred Smith, for the sum of seven hundred and fifty ($750.00) dollars, lots 23 and 24 in block 35 in Park Place addition to Oklahoma City, Oklahoma. The certificate of the said acknowledgment made by the said Robert Mee on said deed is in words and figures as follows, to wit:
" 'State of Oklahoma, Oklahoma County, ss.:

" 'Before me, Robert Mee, a notary public in and for said county and state, on the 13th day of April, 1910, personally appeared Mary Stone, a single woman, and Lula Shields, a single woman, to me known to be the identical persons who executed the within and foregoing instrument, and acknowledged to me that they executed the same as their free and voluntary act and deed for the uses and purposes set forth.

" 'Witness my hand and official seal the day and year above set forth.   Robert Mee, Notary Public.   My commission expires 2-15-1912.'

"A copy of said deed with acknowledgment thereon is attached hereto, and made a part hereof, and marked Exhibit B for identification.   Plaintiff alleges that said certificate of acknowledgment was false, in that the said Mary Stone did not personally appear before the said Robert Mee on the said 13th

day of April, 1910, or any other time, and that the said Mary
Stone did not execute the said deed, nor did she acknowledge
to the said Robert Mee that she had executed the same; that
the said Robert Mee certified to said acknowledgment as to
the identity of the persons appearing before him, and without
any investigation of the identity of said persons.

"Fifth.    Plaintiff alleges that Mary Stone is the owner
of said real estate described in the said deed, but that the said
Lula Shields is not interested in the same in any manner what-
soever.

"Sixth.    Plaintiff avers that the said Alfred Smith, men-
tioned as grantee in said deed, was at the time mentioned herein
a depositor in the said bank of said plaintiff, and had a sum
credited to his account on deposit of more than seven hundred
and fifty dollars ($750.00); that on or about April 13th, 1910,
said Lula Shields delivered said deed to the said plaintiff, and
at the same time she exhibited a check, payable to the said Lula
Shields, and purported to be signed by the said Alfred Smith,
which check was the purported consideration for the execution
of the said deed.   Plaintiff alleges that the check so exhibited
to it as the consideration for said deed was a forgery, and was
not executed by the said Alfred Smith; that, by reason of the
fact that the said deed in the possession of the said Lula Shields
bore certificate of acknowledgment as aforesaid, said plaintiff
was deceived and led to believe the check to be genuine; and
that, upon the faith of the acknowledgment upon said deed,
and relying upon the truth of same, said plaintiff was induced to
honor and pay said forged check.    Plaintiff states that it has
received back two hundred fifty ($250.00) dollars of said amount
so paid, and that the net amount which it has been damaged by
reason of the premises is five hundred dollars ($500.00)."

To this petition defendants filed a general demurrer, which
was sustained by the trial court, and plaintiff brings this appeal,
by transcript of the record, to reverse said order and judgment.
The only question presented is whether or not the petition states
facts sufficient to constitute a cause of action in favor of plain-
tiff and against defendants.

It is urged by plaintiff that it was induced to pay the forged
check, and was deceived and led to believe that the same was
genuine, by reason of the fact that Lula Shields was in possession
of and exhibited a deed bearing the certificate of acknowledg-
ment of the notary public, and that it was upon the faith of this

acknowledgment that the bank paid the check. The defend-
ants contend, on the other hand, that the making of the false
certificate by the notary was not the proximate cause of plain-
tiff's damage, but that the forged check was the direct cause
thereof, and that therefore they should not be held liable. The
plaintiff replies to this by saying that the loss and damage was
occasioned by reason of the certificate of the notary to the
deed, because it was upon the faith of this certificate that the
bank was induced to believe that the check was genuine, it being
the purported consideration of the deed, and, had not the notary
affixed to the deed his false certificate, thereby giving the deed
its genuine appearance, the bank would not have paid the check.

Let us first examine into the liability of a notary's bond.

Section 4241, Rev. Laws. 1910, which was in force at the
time, provides that:

"Every notary public before entering upon the duties of
his office shall file with the county clerk of the county for
which he is commissioned, his oath of office, and a good and
sufficient bond to the state of Oklahoma, in the sum of one
thousand dollars, with one or more sureties, to be approved by
said clerk, conditioned for the faithful performance of the duties
of his said office," etc.

Section 5349, Rev. Laws 1910, provides:

"When an officer, executor or administrator within this
state, by misconduct or neglect of duty, forfeits his bond or
renders his sureties liable, any person injured thereby, or who
is, by law, entitled to the benefits of the security, may bring an
action thereon in his own name, against the officer, executor or
administrator and his sureties, to recover the amount to which
he may be entitled by reason of the delinquency." etc.

The act of a notary public in taking the acknowledgment of
a person to a deed, mortgage, or other instrument is purely min-
isterial and in no wise judicial. 1 Cyc. 557; 1 Am. & Eng.
Ency. Law (2d Ed.) 485; *Barnard v. Schuler,* 100 Minn. 289,
110 N. W. 966. But that fact does not lessen the importance
of the act, nor justify a notary in failing to give due considera-
tion to the discharge of a most grave and responsible duty. A
notary is guilty of negligence if he certifies that he knows a
person whom he does not know, or certifies that he knows a

person on a mere introduction (without further proof) by some third person, or if he certifies that he knows a person to be the identical person who executed an instrument, without such person actually appears before him, and personally acknowledges the instrument in his presence. A notary may be deceived, no matter how careful and painstaking he may be, in the matter of making the identification; but that does not change his duty, or excuse him from using such care and prudence as may be required to convince him that the person who appears before him is in fact the person he claims to be.

In *Barnard v. Schuler,* 100 Minn. 289, 110 N. W. 966, it was said:

"A notary public is not a guarantor of the absolute correctness of his certificate of acknowledgment, nor does he undertake to certify that the person acknowledging the instrument owns or has any interest in the lands therein described; but he does undertake to certify that the party personally appearing before him is known to him to be the person described in and who executed the instrument. If the notary does not personally know the party appearing before him, he should proceed with caution, and either decline to certify to the acknowledgment or investigate the question of the identity of the party with such care and prudence as the gravity of the case demands, and only certify to his identity upon being clearly satisfied of the fact as a result of such investigation. If a notary public certifies to an acknowledgment of an instrument without such personal knowledge and investigation, he is guilty of negligence, and he and his sureties are liable for all damages proximately resulting therefrom."

The foregoing seems to be the general rule with reference to the duties and responsibilities of a notary public. *Barnard v. Schuler, supra; Heidt v. Minor,* 113 Cal. 385, 45 Pac. 700; *Joost v. Craig,* 131 Cal. 504, 63 Pac. 840, 82 Am. St. Rep. 374; *Kleinpeter v. Castro,* 11 Cal. App. 83, 103 Pac. 1090; *Wilson v. Gribben,* 152 Iowa, 379, 132 N. W. 849. The Missouri statute goes much further, and makes his sureties liable for *any* injuries received from the false certificate.

In *Barnard v. Schuler, supra,* it seems that defendant was a notary public, and Frances Winterhalter, a single woman, of

Canton, Ohio, was the owner of certain real estate in the city of St. Paul; that on the day named in the petition three men and a woman appeared before defendant at his office; one of the men he had known for twenty years; the other man he knew only by sight; the man he had known so long introduced the woman to defendant as Miss Winterhalter, and another of the men, Mr. Winterhalter, introduced her as his sister, and asked him to take her acknowledgment of a mortgage in which Barnard, the plaintiff, was named as mortgagee, and which purported to be signed by Frances Winterhalter; the defendant, the notary, had never before seen the woman so introduced to him, and without inquiry or investigation of any kind as to her identity took her acknowledgment of the execution of the mortgage, and stated in his certificate that Frances Winterhalter, a single woman, to him personally known to be the person described in and who executed the mortgage, appeared before him as a notary public, and acknowledged the same to be her free act and deed; that the mortgagor was described as Frances Winterhalter, a single woman, of Minneapolis; that the woman who acknowledged the mortgage was an imposter, but who she was or what her name was is not shown by the record. It is further shown that Frances Winterhalter, who owned the lots, never gave any mortgage on them, and that plaintiff, relying upon the defendant's false certificate, sustained damages in a sum equal at least to the amount of the verdict. The verdict was for the plaintiff as against the notary; but it must not be forgotten that that case was between the notary and *mortgagee*, and that the loss occurred, not by reason of a forged check, but on account of the false certificate of the notary which gave character to the mortgage, and which of itself occasioned the loss of money. In the case at bar the action is not between the notary and the grantee named in the deed, but is between the notary and the bank who claims to have paid the grantee's forged check by reason of the false certificate. Had the grantee in fact given his check by reason of the false certificate, there could be no doubt of his right of action against the notary; but can

the bank, by paying a check purporting to be signed by the grantee, but which in fact was a forgery, be permitted to maintain an action against the notary on account of his false certificate? We think not. To our minds the proximate cause of the bank's loss was not the false certificate of the notary, but the forged check. It may be urged that both together combined to produce the loss, and that the forgery and the presentation of the deed with the false certificate of the notary were in fact an interrelated act; but this contention in sound reason cannot be maintained. Before this conclusion would be warranted, it would be necessary to show that the notary had in mind, or by the use of ordinary care and diligence could have known, the ultimate object or purpose of the unlawful act of the forger of the check, without which the bank would not have been defrauded. In other words, he would have to be one of the conspirators working together with his fellow conspirators for the purpose of defrauding the bank. Of course there is no such contention as that in this case. That being true, it is plain that the act of the notary, though negligent, was not the proximate cause of the loss; neither can it be said that it was a concurring act of negligence which caused the loss, but that the forgery of the check, the presentation of the same to the bank with the deed, and the failure of the bank to use sufficient means to discover the fact of the forgery, such as the identity of the parties, the proving of the signature to the check, etc., were in fact such independent, efficient causes as in themselves would be sufficient to break the chain of sequence, and thereby render the original act of negligence of the notary, not the proximate nor (in this case) even the remote cause of the loss, and therefore neither he nor his bondsmen are liable to the bank for the same. Had the grantee named in the deed been deceived by the false certificate, a wholly different situation would have been presented. But of that it is unnecessary to inquire now.

The judgment should be affirmed.

By the Court: It is so ordered.