## PROBERT v. CASWELL et al.

No. 14053—Opinion Filed May 8, 1923.

Rehearing Denied June 5, 1923.

(Syllabus.)

1. **Signatures—Attestation to Mark—Certificate of Acknowledgment.**

· The certificate of an officer authorized to take acknowledgments of deeds. mortgages,

and other like instruments is a sufficient compliance with the requirements of attestation by witnesses to the grantor's signature made by **mark.**

2. **Acknowledgment — Certificate — Evidence.**

The proper acknowledgment of a deed or mortgage creates a presumption in favor of its execution, and the same may be given in evidence without further proof of its execution, although its execution is denied under oath.

3. **Same—Validity of Mortgage—Burden of Proof.**

Where a defendant pleads that he never executed nor authorized to be executed in his name a mortgage which is offered in evidence, and is the foundation of the plaintiff's cause of action as security for money loan, the burden is upon the defendant to show by clear, cogent, and convincing evidence, and such as produces a conviction amounting to a moral certainty, that the certificate of the notary is false, before the court ·is authorized to invalidate the instrument.

3. **Same—Judgment of Invalidity—Reversal.**

The record in this cause is examined, and the court finds that the evidence of the defendants that one of the defendants did not sign or execute the note and mortgage in question is not sufficient to sustain the burden and impeach the presumption which arises from the certificate of the notary public, and the judgment of the trial court is modified and affirmed, foreclosing the mortgage in question.

Error from District Court, Roger Mills County; T. P. Clay, Judge.

Action by John W. Probert against William L. Caswell and Martha Caswell on note and mortgage. From judgment denying foreclosure of mortgage, plaintiff brings error. Modified and affirmed.

Pearson & Baird and S. Grim, for plaintiff in error.

Floyd Wheeler, for defendants in error.

· BRANSON, J. This appeal is prosecuted by the plaintiff in error, who was the plaintiff below, John W. Probert, against the defendants in error, who were the defendants below, to reverse the judgment of the district court of Roger Mills county, sustaining the defense interposed by the defendants below, to reverse the judgment of the district court of Roger Mills county sustaining the defense interposed by the defendants against the foreclosure of a certain mortgage upon real estate. The parties are referred to as they appeared in the district court. The plaintiff, as the owner by assignment of a note and mortgage in the sum of $650, exe-

euted or purporting to be executed by the defendants and secured by a real estate mortgage, executed or purporting to be executed by the defendants, filed this suit for judgment on the said note and to foreclose the said real estate mortgage. The defendants pleaded that the property involved was the homestead 160 acres of land, and that the defendant William L. Caswell, the husband, did not sign the mortgage sought to be foreclosed, nor authorize the same to be signed for him; that the defendant Martha Caswell did sign the mortgage and the notes.

The trial court entered judgment in favor of the plaintiff and against both defendants upon the note sued on, but in favor of the defendants as to the mortgage, and in so finding, said:

"The court further finds that there is no proof in the record that William L. Caswell ever executed the note and mortgage in question, or that he ever authorized any one to sign his name to the note and mortgage. The court further finds that William L. Caswell is a man who is unable to write, and that he signs his name in an illegible manner, and that it is almost, if not absolutely, impossible, to tell what his name is, after he thinks he has written it on an instrument. * * * The court further finds that the land in controversy being a homestead, and there being no evidence showing that William L. Caswell signed the mortgage, that no estoppel could create a mortgage on the homestead. * * * The court finds in truth and in fact that no mortgage exists against the homestead."

To this action of the court the plaintiff excepted, and on appeal makes numerous assignments of error, but the only one we shall discuss is: "The judgment of the court was not sustained by the evidence." The judgment of the court was in favor of the plaintiff on the notes, for the principal sum of $650, interest, etc., and no complaint is made by the plaintiff of this judgment, but the court stripped the note of its security, and it is on this account that the plaintiff lodges this appeal.

On the face of the mortgage, which was introduced in evidence without objection, it purports to have been executed by the defendant William L. Caswell, by his mark, joined by his wife, Martha A. Caswell, and acknowledged before W. L. Ellison, notary public for Roger Mills county, on September 20, 1909. The mark of the said William L. Caswell appears to have been witnessed by the notary public and one I. M. Howard. The mortgage appears to have been placed of record in said county on September 24,

1909, and there duly recorded in the mortgage records. Default was made under the terms and provisions of the mortgage, and in the latter part of 1916, plaintiff filed his petition seeking judgment on the note and the foreclosure of said mortgage.

No defense was made to either the note or the mortgage, except that the defendants pleaded that William L. Caswell never signed by mark or otherwise the mortgage and note in question. As to this, the plaintiff replied that the said William L. Caswell was estopped under the facts to deny the execution of the instruments in question, and the plaintiff in error urges estoppel. The doctrine of estoppel in this case could be, and is, presented with great force, if not effectiveness, but this doctrine, in its relation to the questions herein involved, will neither be passed upon nor given further consideration, for the reason we think this case can be properly disposed of without discussing the rule of estoppel.

The mortgage is in ordinary form, reciting that it is given to secure a note in the sum of $650, made payable to Francis J. Cushing, due and payable January 1, 1920, with 7 per cent. per annum as interest. It is acknowledged before W. L. Ellison, a notary public. The mark of William L. Caswell purports to be witnessed by W. L. Ellison and I. M. Howard.

In Dyal v. Norton, 47 Okla. 794, 150 Pac. 703, this court said:

"An officer's certificate of the grantor's acknowledgment of a deed filed for record is sufficient compliance with the requirements of attestation by witnesses to the grantor's signature by mark. The acknowledgment of a deed is prima facie evidence of its execution, and a deed properly acknowledged may be given in evidence without further proof, although its execution is denied under oath."

And further:

"The action of a notary public when taking the acknowledgment of a person to a deed, mortgage, or other instrument in this state is ministerial, and is in no wise judicial." (State Nat. Bank v. Mee et al., 39 Okla. 775, 136 Pac. 758.)

And under the rule in states holding to this theory, the certificate of acknowledgment is prima facie evidence of the facts stated therein, and in order to rebut the probative force of the certificate, the proof should be clear and conclusive. 3 Jones on Evidence, sec. 490; Garber et al. v. Hauser et al., 76 Okla. 292, 185 Pac. 436.

In the case of Hill v. Moore, 49 Okla. 613, 149 Pac. 211, the court said:

"In a case where the grantor is unable to write, and the notary or other person taking the acknowledgment signs the grantor's name to the deed, but does not sign his name as a witness to the signature of the grantor, two other persons signing as witnesses to the signature, the certificate by the notary or other officer, of the grantor's acknowledgment, is a sufficient compliance with the statute, as such an acknowledgment by the grantor is an adoption of the signature."

And, again, in Campbell v. Harsh, 81 Okla. 436, 122 Pac. 127, we find:

"It is urged that as there was no evidence that either of the subscribing witnesses to any one of these deeds signed the name of any one of said several grantors thereto, none of said deeds was shown to have been properly executed and were void. To this it is sufficient to say that, since said signing and witnessing is fair on its face, if it were necessary to uphold the validity of these deeds, it might be fairly presumed, since the law requires it, that one of the witnesses did sign the name of the grantor. But it is unnecessary to indulge in such presumption, for the reason that acknowledgment before the proper officer was in effect an adoption by the grantor of the signature thus made, which was all that was necessary."

It therefore appears that, the mortgage in question being duly acknowledged before a notary public, the presumption attending such acknowledgment placed the burden of proof upon the defendant William L. Caswell to show that he never signed the instrument nor adopted the signature as his own.

In the case of Dyal v. Norton, supra, this court said:

"The evidence to impeach a certificate of acknowledgment should be clear, cogent, and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false."

And, again, this court said in the case of Garber et al. v. Hauser et al., supra:

"Such testimony may be sufficient, if in view of the circumstances and probability of the particular case, it produced a condition amounting to a moral certainty that the certificate is false."

And, again, in the case of Wolverine Oil Co. v. Parks et al., 79 Okla. 318, 193 Pac. 624, we find this court, speaking through Justice Pitchford, said:

"The evidence to impeach a certificate of acknowledgment should be clear, cogent, and convincing, and sues as produces a conviction amounting to a moral certainty that the certificate is false."

And in Devlin on Real Property, vol. 1, sec. 539, we find this statement:

"The evidence to impeach a certificate must be clear and convincing, and must establish the fact beyond a reasonable doubt."

In the case of Lickman v. Harding, 65 Ill. 505, the Supreme Court of that state says:

"Public policy requires such an act should prevail over the unsupported testimony of the interested party; otherwise, there would be but slight security in titles to land."

In Peoples Gas Co. et al. v. Fletcher, 81 Kan. 76, 105 Pac. 34, 41 L. R. A. (N. S.) 1161, it is stated:

"And especially does the rule apply where the conduct of the grantor is inconsistent with his claim." (McArdia v. Billings [N. D.] 87 N. W. 1008.)

And in the case of Polk v. Brown (Ark.) 174 S. W. 562, the Supreme Court of that state said:

"The burden of proof undoubtedly rests upon the person denying that one signed a deed or acknowledged it, to show that the falsity of the certificate, which carries with it the usual presumption that the officer making it had certified to the truth, and had not been guilty of a wrongful or criminal action."

And this rule is supported in the federal case of Mather v. Jarel et al., 33 Fed. 366, in which the federal court laid down the rule that the proof to overcome the presumption of the verity of the certificate of the notary must be clear, cogent, and convincing, and that a less stringent rule would render title to real estate insecure. To ascertain whether or not the conclusion of the trial court measured by these rules of law, as to the presumption attending the certificate of the notary public and the burden of proof on the defendant, we must turn to the record, and when we look at the same fairly there is not to be found therein one circumstance in connection with this transaction which in any degree either corroborates or supports the contention made by the defendant William L. Caswell and wife that he never signed nor authorized to be signed, nor acknowledged, the mortgage in question.

Briefly reviewing the evidence in the record, we find the unimpeached testimony of several witnesses. One A. M. Anderson testified, in substance, that he represented the loan company in this transaction, to wit, Close Bros. & Co.; that this loan was made through their agent, J. G. Scott, of Elk City; that none of the principal of the note or mortgage had been paid, but that some of the interest coupons had been paid. That

he had received several letters from the defendant William L. Caswell, and was at the home of the said defendant at two different times, and that the defendant never denied that he received the proceeds of the loan, and agreed that he would pay the interest. That neither in oral conversation nor in the letters received, did the said Caswell ever deny that he signed the notes and the mortgage in question. One letter identified, dated December 19, 1910, signed by William L. Caswell, enclosed a draft for $59.15 to apply on interest, which was the first coupon due. That the letter had the name of William L. Caswell signed to it; that in his talk at the farm, Caswell wanted an extension of time to pay the interest on the loan. This was sometime in 1915. Ambrose also identified the signature of I. M. Howard, one of the witnesses to the mark of William L. Caswell.

J. G. Scott testified that he lived at Elk City; that he negotiated the loan in question; that an application was taken for the loan, which is set out in the record; that William L. Caswell signed the application for the loan before the notary public; that the said W. L. Ellison, the notary, died sometime after the note and mortgage were executed; that he knew the witness to the mark, I. M. Howard, and that the signatures on the mortgage as witnesses to the mark of William L. Caswell were the signatures of W. L. Ellison and I. M. Howard; that he disbursed the money, the proceeds of the loan; that the money was paid in the sum of $641.65, to William L. Caswell, in the form of a check; that the check was paid at a bank in Elk City; that the difference between the $650, the principal of the loan, and the $641.65 received by William L. Caswell, was the cost of the abstract to the property, and that William L. Caswell had several times talked to him thereafter about payment of the interest, and never had stated or suggested that he did not execute the mortgage in question...

R. F. Baird testified that at the time of this transaction he was in the abstract business in Cheyenne, Roger Mills county; that he knew Dr. Ellison, the notary public; that he knew I. M. Howard; that the signatures to the mortgage were the signatures of Dr. Ellison and I. M. Howard; that Dr. Ellison had since died, and that the said I. M. Howard was in South America.

J. W. McMurtry testified that he was county attorney of Roger Mills county; that he knew W. L. Ellison, the notary public, in his lifetime, and that the said Ellison was a man whose reputation as to honesty and integrity was good.

So it appears that the witness to the signature of the defendant William L. Caswell, being the notary public, was dead; the other witness, I. M. Howard, was not in the country. The only testimony offered by the defendant was the testimony of himself and his wife, both parties interested.

Martha Caswell, who could write well, and whose signature could be easily identified, testified in substance that she signed the notes and the mortgage; that the mortgage was brought to her home by the notary public, W. L. Ellison, at or about the time that the certificate of the notary discloses; that her husband was sick in bed; that he knew what was going on, but that he refused to sign the note or the mortgage; that she signed the note and the mortgage; that she acknowledged the same before W. L. Ellison. That her husband, William L. Caswell, and she received the $650, and expended the money as they saw fit. That several letters had been written to the loan company touching this loan, but that in none of the letters had she ever mentioned that William L. Caswell did not sign the note and mortgage. That several of these letters she had talked over with Caswell before they were mailed; that they had paid part of the interest due on the mortgage; that part of these letters were written at the request of Caswell, and part she wrote for herself.

William L. Caswell testified in substance that he never signed the note and mortgage in question. He testified as to what purported to be a signature on the application for the loan, on viewing the same, that "it looks something like my signature; yes, sir." He stated that he received the proceeds of the loan as stated by J. G. Scott; that the money was paid to him—"Q. You admit that you owe this company this money? A. Yes, sir." That he sometimes undertook to sign his name, and that he sometimes signed by mark—"Q. You don't remember ever signing any application for a loan? A. I do not, but that actually looks like my handwriting. I have no knowledge of ever signing anything."

This application for the loan bears date of September 6, 1909. The acknowledgment of the notary to the mortgage bears date of September 20, 1909, or a period of 14 days later, during which time no doubt the abstract was secured, the title examined, the note and mortgage prepared, and the loan approved by the company, and the

mortgage and note sent for execution. Both defendants boldly admit that they received the money represented by the note and the mortgage.

We think, under these circumstances, measured by the rules of law above set out, that the unsupported and uncorroborated testimony of the parties directly at interest, who acknowledge receipt of all the money involved, who had corresponded at frequent intervals covering a period of years with the loan company, who had never called into question the genuineness of the execution of the note and the mortgage, and do so only when pressed for payment, and after the notary public is dead and the other witness to the signature is not in the country, is wholly insufficient to warrant the court in finding that the defendants had sustained the burden and overcome the presumptions raised by the certificate of the notary.

It therefore follows that the judgment of the trial court for the plaintiff on the notes should be supplemented and modified to the extent of finding the mortgage was executed, and ordering the mortgage foreclosed. as provided by law, and, as so modified and supplemented, the judgment is affirmed.

JOHNSON, C. J., and McNEILL, KANE, KENNAMER, NICHOLSON, COCHRAN, HARRISON, and MASON, JJ., concur.