2000 OK 11

Grady SLAY, Plaintiff/Appellee,

v.

STATE of Oklahoma ex rel. DEPART-
MENT OF PUBLIC SAFETY, De-
fendant/Appellant.

No. 91562.

Supreme Court of Oklahoma.

Feb. 22, 2000.

the jurisdiction in which it was executed could not be ascertained. The district court agreed and sustained plaintiff's demurrer. The court also found that probable cause did not exist to arrest Slay for driving while intoxicated.

I

## FACTS AND PROCEDURAL HISTORY

¶2 Slay was arrested on May 4, 1996 for operating a motor vehicle while under the influence of alcohol. When he was asked to submit to a chemical test to assess his sobriety, Slay refused. After a July 24, 1996 administrative hearing appellee's driver license was revoked under the terms of Oklahoma Implied Consent Law.[2] Slay sought de novo review of the revocation in the district court.

Earl L. Reeves, Jr., Oklahoma Department of Public Safety, Oklahoma City, Oklahoma, for the appellant.

Michael Gardner of the Law Offices of Joe Farnan, Purcell, Oklahoma, for the appellee.

LAVENDER, J.

¶1 The Department of Public Safety [DPS or appellant] seeks review of a district court's judgment that reversed an earlier administrative revocation of Slay's [plaintiff or appellee] driver license.[1] During the review proceedings DPS introduced the "Officer's Affidavit and Notice of Revocation/Disqualification" [Affidavit], took the arresting officer's testimony and then rested its case. Slay demurred to the evidence, asserting that although a faint facsimile of a notary public's seal is apparent upon the Affidavit, it should not be admitted into evidence because

¶3 During the May 28, 1998 review proceeding the arresting officer testified: (1) that he observed a motor vehicle being driven three feet left of the center line of public street for a distance of approximately 100 feet; (2) that after the vehicle [a truck] was stopped, the officer observed a mug containing a liquid next to the driver which Slay (upon being asked) identified as bourbon; (3) that he [the officer] observed Slay had

---

1. Driver appealed to the McClain County District Court from an administrative revocation of his driver license for refusing to undergo a breath test prescribed by Oklahoma's Implied Consent Law. See 47 O.S.1991 § 751 et seq. When a petition to vacate is brought, the district court reviews de novo the consensual driver license revocation. 47 O.S.1991 § 6–211.

   The pertinent terms of § 751 are:

   "Any person who operates a motor vehicle upon the public roads ... within this state shall be *deemed to have given consent* to a test or tests of such person's blood or breath, *for the purpose of determining the alcohol concentration* ... if arrested for any offense arising out of acts alleged to have been committed while the person was operating or in actual physical control of a motor vehicle upon the public roads...."[Emphasis added.]

   The pertinent terms of § 6–211 are:

   "A. Any person denied driving privileges, or whose driving privilege has been ... revoked by the Department ... shall have the right to appeal to the district court as hereinafter provided. Proceedings before the district court shall be exempt from the provisions of the Oklahoma Pleading and Discovery codes, ex-

   cept that the appeal shall be by petition, without responsive pleadings. The district court is hereby vested with original jurisdiction to hear said petition.

   \* \* \*

   D. Any person whose driving privilege is revoked or denied or who is denied a hearing pursuant to Section 753 or 754 of this title may appeal to the district court in the county in which the arrest occurred relating to the test refusal or test result, as shown by the records of the Department."

2. See supra note 1. See *also* the pertinent terms of 47 O.S.1993 § 753, which provide:

   "The Commissioner of Public Safety, upon receipt of a *sworn report of the law enforcement officer* that the officer had reasonable grounds to believe that the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol ... and that *the person had refused to submit* to the test or tests, *shall revoke* the license to drive...." [Emphasis added.]

slurred speech and when asked to step out of his truck, he had trouble maintaining his balance; and (4) that driver had a noticeable smell of alcohol on his breath. The officer also testified that after he had formed an opinion that Slay was intoxicated, he asked him to undergo a chemical test for alcohol consumption. Slay refused and acknowledged his refusal in writing by signing section 2 of the Affidavit. The officer also testified that he advised Slay his refusal to take the test would result in the revocation of his license. The arresting officer further testified that he signed the Affidavit in the presence of a notary public. Lastly, he testified that another officer administered a field sobriety test to assess Slay's degree of intoxication. At the conclusion of the officer's testimony, DPS rested.

¶ 4  Slay objected to admission of the officer's Affidavit, asserting that because the details which are normally embossed by the notary public's seal[3] on the instrument were too faint to read, the identity of the person signing as the notary public was indeterminable. Driver further argued because the law requires the Affidavit be sworn, the seal's absence constituted a fatal jurisdictional flaw.[4] The district court set aside the revocation of Slay's license, finding that DPS had failed to prove by adequate evidence (1) that the "jurisdictional documentation" needed for administrative revocation was properly completed and (2) that the arresting officer had probable cause to believe that Slay was driving under the influence of alcohol.

¶ 5  The Court of Civil Appeals [COCA] reversed the district court's decision and ordered the cause remanded with instructions that an order be entered reinstating the revocation of Slay's driver license. Appellee then sought certiorari which was granted.

## I

## THE DOCUMENTATION SUBMITTED TO THE COMMISSIONER OF PUBLIC SAFETY IS ADEQUATE TO ESTABLISH SLAY'S NON–CONSENT TO THE STATUTORILY MANDATED CHEMICAL TEST TO ASSESS SOBRIETY

■ ¶ 6  Essential to Slay's quest for appellate relief is his assertion that DPS failed to meet its evidentiary burden in establishing his refusal to consent to the sobriety test requested of him. To prevail State must prove its case by a preponderance of the evidence in a driver-license revocation case.[5]

■ ¶ 7  The terms of § 753 [6] predicate driver-license revocation upon the Commissioner of Public Safety's receipt of a "sworn report of a law enforcement officer." Slay challenges the legal efficacy of the Affidavit filed in this cause, arguing that the officer's report was "insufficient" because it was not properly notarized.[7] Driver asserts that the Affidavit does not contain a notary public's seal nor does it reflect the jurisdiction in which the notarial act was performed.

■ ¶ 8  Oklahoma's extant jurisprudence recognizes that an acknowledgment is prima facie evidence of a document's execution. There is imposed upon one who seeks to impeach a certificate of acknowledgment—which substantially complies with the law—the burden of producing evidence which is "clear, cogent, and convincing, and . . . produces a conviction amounting to a moral cer-

---

3.  A notary public's seal must reflect the notary's name and the county in which he or she resides. 49 O.S.1991 § 5. The seal also identifies its holder as a notary public for the State of Oklahoma.

4.  See *supra* note 2 for the relevant statutory provision.

5.  *Smith v. State ex rel. Department of Public Safety,* 1984 OK 16, 680 P.2d 365, 368; *Peters v. Oklahoma Dept. of Public Safety,* 1976 OK 183, 557 P.2d 908, 909.

6.  For the pertinent terms of 47 O.S.1993 § 753, see supra note 2.

7.  DPS moved for the Affidavit's admission. See Tr. Trans., p. 15. Slay asserts that the trial court denied the Affidavit's admission. The Tr. Trans. does not substantiate this. While the record is silent as to the district court's ruling on the Affidavit's admission into evidence, the district court judge in all respects treated the document as though it were admitted into evidence. Hence, we deem the Affidavit in issue to have been properly admitted into evidence by the district court.

tainty that the certificate is false."[8] The record does not substantiate that Slay met his burden.

¶ 9 First, the Affidavit does reflect that it was executed in the State of Oklahoma, County of McClain. The Affidavit is properly construed by examining what lies within the four corners of the document. It is a printed document which in its upper lefthand corner reflects the following:

"State of Oklahoma)

County of McClain) ss."

BLACK'S LAW DICTIONARY 1403 (6th ed.1990) defines "ss." to represent "an abbreviation used in that part of a . . . affidavit, called the 'statement of the venue.'" Hence, the Affidavit in issue adequately identifies the jurisdiction in which it was executed and acknowledged. Lastly, the visible facsimile of the seal on the Affidavit when considered in conjunction with the officer's testimony that he swore to the affidavit in the presence of a notary public prevails over Slay's failure to adduce any evidence which amounts to a "clear and cogent" rebuttal of the acknowledgment's legal efficacy.[9]

## III

## THE ARRESTING OFFICER HAD PROBABLE CAUSE TO INITIALLY STOP SLAY AND LATER ARREST HIM.

¶ 10 Under the facts disclosed by the record there can be no question that the arresting officer had probable cause to arrest Slay. Certainly the driver's erratic operation of his motor vehicle [10]—i.e., driving across the center line—provided justification for stopping Slay. When an officer properly stops a vehicle and later observes a misdemeanor [e.g., determines upon inquiry that the driver is operating the car under the influence of alcohol], a later arrest is lawful.[11] The COCA's opinion—insofar as it upholds the validity of Slay's arrest—is sustained.

## IV

## CONCLUSION

¶ 11 The district court's decision that the administrative revocation of Slay's driver license was not sustainable is reversed. The arresting officer had probable cause to stop Slay. When—after making a proper stop—it became apparent to the officer that Slay was operating a motor vehicle under the influence of alcohol, the officer was justified in requesting that Slay submit to a test for sobriety. Slay's non-consent to the requested test constitutes ground for revoking his driver license under Oklahoma's Implied Consent Law. The administrative documentation submitted to DPS adequately comports with the standards mandated by the governing statutes and, hence, provides an adequate legal basis for the earlier revocation.

¶ 12 From the transcript of the appellate proceedings in the district court it appears that the court ruled at the conclusion of DPS's case, i.e., before Slay was able to put on his own defense. Each party in a case must be afforded an opportunity to present its case. This is an essential component of due process.[12] For this reason the cause must be remanded.

¶ 13 Upon certiorari earlier granted,

THE COURT OF CIVIL APPEAL'S OPINION IS AFFIRMED IN PART AND VACATED IN PART AND THE DIS-

---

**8.** *Probert v. Caswell et ux.,* 90 Okla. 67, 215 P. 733, 734 (Okla.1923); *Dyal v. Norton,* 47 Okla. 794, 150 P. 703 syl. (Okla.1915).

**9.** See *Cheek v. State ex rel. Dept. of Public Safety,* 1991 OK 68, 813 P.2d 1049, 1050. This is also true when considered in light of Oklahoma's extant jurisprudence which finds that the absence of a notary public's seal on an initiative petition constitutes a technical error which may be later corrected. *In re Initiative Petition No. 224, State Question No. 314,* 197 Okla. 432, 172 P.2d 324, 328 (Okla.1946).

**10.** The district court judge premised his decision about the lack of probable cause upon the fact that the police were tipped off by a phone call to look for Slay's truck. To reach this decision the independent cause for stopping the driver—erratic operation of a motor vehicle on a public thoroughfare—was evidently not given proper legal consideration.

**11.** *Smith,* supra note 5 at 367.

**12.** *Crussel v. Kirk,* 1995 OK 41, 894 P.2d 1116, 1120–21.

TRICT COURT'S JUDGMENT IS RE-
VERSED.

¶14 SUMMERS, C.J., HARGRAVE,
V.C.J., HODGES, KAUGER, BOUDREAU
and WINCHESTER, JJ., concur.

¶15 OPALA and WATT, JJ., concur in
part; dissent in part.